Case 4:22-cv-01705   Document 26   Filed on 07/11/23 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
July 11, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HURSHELL WHEELER, (TDCJ #00870713) | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. H-22-1705 |
| BRYAN COLLIER, *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hurshell Wheeler, an inmate in the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ), has filed a civil-rights complaint under 42 U.S.C. § 1983, alleging that he is confined in administrative segregation at the Ferguson Unit in violation of the Fourteenth Amendment. He sues (1) Bryan Collier, TDCJ's Executive Director; (2) Richard Bledsoe,[1] and (3) Joel Guzman, the Security Threat Group supervisor at the Ferguson Unit.[2] Wheeler represents himself and has been granted leave to proceed without prepayment of the filing fee.

The defendants have moved to dismiss the complaint under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry No. 14). Wheeler has filed a response. (Docket Entry No. 23). Having reviewed the pleadings, the motion, the response, the record, and

---

[1] Wheeler identifies Bledsoe's position only by the acronym "RISTGC." (*See* Docket Entry No. 9 at 6). From the pleadings, it appears that Bledsoe's position is involved with the Security Threat Group.

[2] Wheeler also named Charlie Reid, the former Security Threat Group supervisor at the Ferguson Unit, as a defendant. The court did not order service on Reid. The claims against Reid are discussed in Section IV of this opinion.

the applicable law, the court grants in part and denies in part the motion to dismiss. The reasons are explained below.

I.      Background

Wheeler alleges that he is indefinitely confined in administrative segregation—a form of solitary confinement—at the Ferguson Unit due to his alleged status as a gang member. (Docket Entry No. 9 at 4). On July 11, 2000, Wheeler was confirmed as a member of a "Security Threat Group" (STG) and was placed in administrative segregation. (*Id.*). On June 23, 2004, Wheeler renounced his gang membership and began the Gang Renouncement and Disassociation (GRAD) process. (*Id.*). The Texas Department of Criminal Justice mandates completion of the GRAD process for recognition as an ex-gang member, which is required for release from confinement in administrative segregation. (*Id.* at 4–5). Wheeler successfully completed the GRAD process on May 23, 2007. (*Id.* at 5). As a result, his status was changed to "ex-STG member" and he was released from administrative segregation. (*Id.*).

On August 31, 2010, Wheeler claims that "absent any new specific documentary or physical evidence to support renewed gang affiliation, the Roach Unit STG department erroneously reconfirmed me as active STG and confined me to ad[ministrative] seg[regation] once again." (*Id.*). Wheeler asserts that the decision to reconfirm him as a member of a Security Threat Group and confine him in administrative segregation was based on the same evidence—a tattoo that Wheeler had not removed or covered because to do so was not required for him to renounce his membership—that was used to confirm his gang membership status on July 11, 2000. (*Id.*). Wheeler asserts that because removing or covering the tattoo was not required to renounce his gang membership, the tattoo should not be allowed as evidence that he was a member of a Security Threat Group. (*Id.*) He further argues that because GRAD policy does not allow for an inmate to

participate in the GRAD process more than once, he is indefinitely confined in administrative segregation because there is no alternative method for release from administrative segregation. (*Id.*).

Wheeler has been confined in administrative segregation for over eight years and describes his confinement there as follows:

> Ad[ministrative] Seg[regation] deprives me of a number of privileges that I would be afforded if I was in the general population. I am confined in a solitary cell that consist[s] of a toilet/sink combination, two metal bunk beds, and an open faced storage locker. I am allowed out of my cell for only one hour a day for recreation and shower purposes, before leaving my cell I am stripped searched and handcuffed. I am not allowed contact visits with family and friends. I can't participate in educational, vocational, religious, or cognitive classes. I am repeatedly denied parole because of my alleged status as a gang member.

(*Id.* at 5–6).

Wheeler claims that as TDCJ's executive director, Collier has the authority to investigate his claim of unconstitutional confinement and erroneous classification but refuses to do so. (*Id.* at 6). He asserts that Bledsoe refuses his requests to make an alternative program available that will allow for Wheeler's dissociation and release from administrative segregation. (*Id.*). He also states that Bledsoe "refuses to even consider the possibility that a mistake was made in the decision to reconfirm me . . . nor will he share with me what other supposed evidence there is against me so I cannot dispute it." (*Id.*). Wheeler argues that Guzman, as the Ferguson Unit's current STG supervisor, has ignored all of his requests concerning dissociation status. (*Id.*). He claims that "[p]rison officials must ensure that the criteria used to support gang affiliation are based on specific documentary or physical evidence, which is not the case in this instance." (*Id.*).

Wheeler seeks injunctive relief and immediate release from administrative segregation. (*Id.* at 4).

3

The defendants have filed a motion to dismiss Wheeler's complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry No. 14). Wheeler has filed a response. (Docket Entry No. 23).

## II. Standards of Review

### A. Motion to Dismiss Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). The court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *In re Mirant Corp.*, 675 F.3d 530, 533 (5th Cir. 2012).

### B. Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) may be granted if the pleading "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)). Federal rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Rogers v.*

*Boatright*, 709 F.3d 403, 407 (5th Cir. 2013). Under this standard, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true[,]" and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington.*, 563 F.3d at 147 (internal citations and quotation marks omitted).

### C.  Pleadings by Self-Represented Litigants

In reviewing the pleadings, the court is mindful that Wheeler represents himself. Courts construe self-represented litigants' pleadings under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even under this lenient standard, a self-represented plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678 (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* No matter how well-pleaded the factual allegations may be, they must reveal that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

## III.  Discussion

### A.  The Defendants' Rule 12(b)(1) Motion

The defendants argue that they are entitled to Eleventh Amendment immunity for claims brought against them in their official capacities, and that the exception to Eleventh Amendment immunity set out in *Ex parte Young*, 209 U.S. 123 (1908), does not apply.

5

A claim against a TDCJ official in his or her official capacity is a claim against TDCJ, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 604 (5th Cir. 2008). Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Martinez v. Tex. Dep't of Crim. Just.*, 300 F.3d 567, 575 (5th Cir. 2002). Texas has not waived its Eleventh Amendment immunity and Congress did not abrogate that immunity when enacting 42 U.S.C. § 1983. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). The Eleventh Amendment also bars a federal action for money damages against state officials when the state itself is the real party in interest. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity.") (citations omitted).

An exception to Eleventh Amendment immunity was established in *Ex parte Young*, 209 U.S. 123 (1908). Under the *Ex parte Young* exception, "a case can proceed against individual state officials named in their official capacities when the claim is for an ongoing violation of federal law, but the relief sought must be prospective." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) (quoting *Daves v. Dallas Cty., Tex.*, 984 F.3d 381, 397 (5th Cir. 2020)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Under the *Ex parte Young* exception, the "proper defendant is a state official acting in violation of federal law who has a 'sufficient 'connection' to enforcing an allegedly unconstitutional law.'" *Valentine*, 993 F.3d at 280 (quoting *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020)). "The required 'connection' is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quoting *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2011) (en banc)).

In the motion to dismiss, the defendants argue that the *Ex parte Young* exception does not apply here because Wheeler has not demonstrated that Collier, Bledsoe, or Guzman have a "'sufficient connection' regarding affirmative action with respect to decisions concerning his STG classification or whether he is confined to administrative segregation." (Docket Entry No. 14 at 4–5). In response, Wheeler asserts that Collier is a proper defendant because Collier has the authority to investigate his claim of unconstitutional confinement and erroneous classification but has failed to do so. (*See* Docket Entry No. 23 at 3; Docket Entry No. 9 at 6). Wheeler argues that Bledsoe, as a member of the committee who considers STG member designations, is a proper defendant because he interviewed Wheeler and did not "make clear" to him why his status as an ex-STG member was revoked after he completed the GRAD program. Wheeler also argues that Bledsoe told him that he could attend GRAD for a second time if certain conditions were met. (*See* Docket Entry No. 23 at 3; Docket Entry No. 9 at 6). Wheeler asserts that Guzman, as the current STG supervisor at the Ferguson Unit, is a proper defendant because he is tasked with responding to and investigating STG complaints and that Guzman has ignored Wheeler's complaints concerning his disassociation status. (*See* Docket Entry No. 9 at 6; Docket Entry No. 23 at 3).

7

Wheeler has sued the defendants in their official capacities and the only relief he seeks is prospective injunctive relief. (*See* Docket Entry No. 9 at 4). The court agrees with the defendants that Wheeler has not met his burden to show that Collier has a sufficient connection to deciding whether Wheeler should be subject to continued confinement in administrative segregation or to deciding whether he should be subject to STG classification. However, Wheeler has alleged that Bledsoe and Guzman are involved in the decision-making regarding his status as an STG member and are likely capable of providing Wheeler's requested injunctive relief challenging his continued confinement in administrative segregation. The court grants the defendant's Rule 12(b)(1) motion to dismiss as it pertains to Collier, but denies the motion in all other respects.

**B.      The Defendants' Rule 12(b)(6) Motion**

The defendants argue that Wheeler's Fourteenth Amendment claim should be dismissed for failure to state a claim under Rule 12(b)(6). (Docket Entry No. 14 at 6). The defendants assert that even though it is unclear whether Wheeler intended to plead an equal protection claim or a due process claim under the Fourteenth Amendment, the claim should be dismissed because Wheeler has no liberty interest in his confinement to administrative segregation. (*Id.*). The court examines the potential for an equal protection claim and a due process claim in turn.

*1.      Fourteenth Amendment Equal Protection Claim*

"The Equal Protection Clause of the Fourteenth Amendment is 'essentially a direction that all persons similarly situated should be treated alike.'" *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To establish an equal protection violation, [a plaintiff] 'must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated.'" *Barnes v. Pierce*, 338 F. App'x 373, 377 (5th Cir. 2009) (per curiam) (quoting *Baranowski v. Hart*, 486 F.3d 112, 113 (5th Cir. 2007)). As

8

pointed out by the defendants, Wheeler does not plead facts showing that he was similarly situated with any other individual or groups that he claims received superior treatment. To the extent Wheeler intended to bring a challenge to the Fourteenth Amendment's Equal Protection Clause, such claim is dismissed for failure to state a claim.

### 2. Fourteenth Amendment Due Process Claim

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). A liberty interest sufficient to give rise to due-process protections "may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies[.]" *Wilkinson*, 545 U.S. at 221.

Generally, prisoners have no liberty interest in their custodial classification. *Wilkerson*, 774 F.3d at 852. Placement in administrative segregation is generally viewed as an ordinary, expected, and permissible incident of prison life. *See, e.g.*, *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996) (holding that "absent extraordinary circumstances, administrative segregation . . . being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim"); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (holding that "administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest").

Nevertheless, assignment to administrative segregation can implicate a liberty interest when it is used in a way that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkerson*, 774 F.3d at 853 (quoting *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008)). The Supreme Court has identified three factors that are especially relevant to the question of whether confinement in segregation is atypical and

significant: (1) the severity of the confinement restrictions in administrative segregation; (2) the duration of the confinement in administrative segregation; and (3) whether assignment to administrative segregation has any collateral consequences on the inmate's sentence, such as whether that placement disqualifies an otherwise eligible inmate for parole considerations. *Wilkinson*, 545 U.S. at 223–24; *see also Wilkerson*, 774 F.3d at 853 (explaining that when determining whether an inmate's conditions of confinement implicate a liberty interest, a court is to consider "the nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence") (quoting *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008)).

As it must, the court accepts Wheeler's allegations as true and views them in the light most favorable to him. Wheeler alleges that he was previously confined in administrative segregation but that he successfully completed the GRAD program in 2004 and was released from administrative segregation. He alleges that he was erroneously reclassified as an active member of an STG and was again confined to administrative segregation due to a tattoo that he did not remove or have covered up because neither step was required to dissociate from the gang. Wheeler alleges that he has been re-confined to administrative segregation for over eight years. He alleges that he is essentially being indefinitely housed in administrative segregation because an inmate cannot complete the GRAD process more than once. He further alleges that confinement in administrative segregation denies him a number of privileges that he could access if he were housed within the general prison population, such as being allowed out of his cell for more than one hour a day, contact visits with family and friends, and participation in educational, vocational, religious, and cognitive classes. He also alleges that he is denied parole because of his alleged status as a gang member.

Wheeler has alleged that his confinement in administrative segregation is harsher than the conditions that inmates in the general population experience. He has also alleged that his opportunity for parole is affected. He has also alleged that he has been confined in administrative segregation for over eight years. These are factors a court considers when deciding whether a liberty interest is implicated. *See, e.g.*, *Rroku v. Cole*, 726 F. App'x 201, 205 (5th Cir. 2018) (per curiam); *Sandin v. Conner*, 515 U.S. 472, 486–87 (1995); *Wilkinson*, 545 U.S. at 224. As explained by the Fifth Circuit, when determining whether an inmate has a liberty interest in his custodial classification, "courts employ a sliding scale, taking into account how bad the conditions are *and* how long they last." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). "On such a sliding scale, truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Id.* The Fifth Circuit has "suggested that two and a half years of segregation is a threshold of sorts for atypicality[.]" *Id.* (citing *Wilkerson*, 774 F.3d at 855).

On this record, dismissal under Rule 12(b)(6) is not warranted. The defendants may raise this argument again at a later stage of the case, if appropriate.

## IV.    Claims Against Charlie Reid

Wheeler has also sued Charlie Reid, the former STG supervisor for the Ferguson Unit. The court examines whether the claims against this defendant are appropriately dismissed for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915. *See* 28 U.S.C. § 1915(e)(2)(B) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted[.]").

Because Wheeler seeks only prospective injunctive relief related to his status as a member of an STG and his confinement in administrative segregation, Reid, as a former STG supervisor,

11

cannot give Wheeler the relief he seeks. Wheeler does not allege that Reid continues to take part in decisions regarding his confinement in administrative segregation; to the contrary, his allegations against Reid pertain to Reid's past actions. (*See* Docket Entry No. 9 at 3, 6). The claims against Reid are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state claim on which relief may be granted.

### V. Conclusion

For the reasons stated above the court orders that the defendants' motion to dismiss, Docket Entry No. 14, is granted in part and denied in part. The defendant's Rule 12(b)(1) motion is granted in respect to defendant Bryan Collier and the claims against Collier are dismissed. Any Fourteenth Amendment Equal Protection Claim intended to be brought by Wheeler is dismissed. In all other respects, the defendants' motion to dismiss is denied.

Wheeler's claims against defendant Charlie Reid are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

Wheeler's Declaration for Entry of Default, Docket Entry No. 15, is denied.

The previous stay entered in this case, Docket Entry No. 25, is lifted. The Scheduling Order entered as part of this court's November 9, 2022, Order to Answer is modified as follow:

**8/1/2023** Deadline for the defendants to file an answer.

**8/31/2023** Deadline for the parties to disclose to each other all information relevant to the claims or defenses of any party. The parties must promptly file a notice of disclosure with the court after such disclosure has taken place.

**10/30/2023** Deadline to file motion for summary judgment.

The rest of the order entered November 9, 2022, remains in effect.

SIGNED on July 11, 2023, at Houston, Texas.

                                                Lee H. Rosenthal
                                      United States District Judge